IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JOSE L. CASTRO-HERNANDEZ**

    Plaintiff,

    v.

**MICHAEL ASTRUE,** Commissioner of the Social Security Administration,

    Defendants.

Civil No. 11-1864 (BJM)

**OPINION AND ORDER**

    Plaintiff Jose L. Castro-Hernandez ("Castro") seeks judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), disallowing disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C §§ 416(i) and 423(d) (the "Act"). (Docket No. 1). Castro requests that the judgment be reversed and prays for an order awarding disability benefits. Castro filed a memorandum of law in support of his position. (Docket No. 23). The Commissioner answered the complaint (Docket No. 10) and filed a memorandum of law in support of his decision. (Docket No. 29). This case is before me on consent of the parties. (Docket No. 6). After careful review, the Commissioner's decision is affirmed.

**LEGAL STANDARD**

    The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence. Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v.

Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The court "must affirm the [ALJ's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez-Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).  In determining whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is disabled.  20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec'y of Health and Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  If he is not, the ALJ proceeds to step two, and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step,

which asks whether the claimant has an impairment equivalent to a specific list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, where the ALJ assesses the claimant's residual functional capacity ("RFC")[1] and determines whether the impairment prevents the claimant from doing the work he performed in the past. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(f). If the claimant cannot perform this work, then the fifth and final step of the process asks whether the claimant is able to perform other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). The ALJ "may use the services of a vocational expert for this determination." 20 C.F.R. § 404.1566(e). If there is no other work in the national economy that the claimant can perform, he is entitled to disability benefits. 20 C.F.R. § 404.1520(g)(1). If there is other work in the national economy that the claimant can perform, he is not entitled to disability benefits. (Id.).

The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant meets that burden, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

---

[1] An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

## FACTUAL AND PROCEDURAL BACKROUND

Castro was born in 1958. (Transcript ["Tr."] 26, 108, 232, 241, 301, 361). He has a high school education (Tr. 28) and has worked as a security guard but spent most of his life working in construction as a laborer. (Tr. 27, 55-64, 253-262, 271-280). Castro claims that he became disabled and unable to work on March 30, 2005 (Tr. 232) due to neck and back pain, nervous and emotional conditions, diabetes, and high blood pressure. (Tr. 28-32, 176, 245). Castro filed an application for Disability Insurance Benefits in 2007. (Tr. 230-236). He accrued sufficient quarters to remain insured through March 31, 2008. (Tr. 237).

During the relevant period, that is, from March 30, 2005, the alleged onset date, through March 31, 2008, the date Castro was last insured for disability insurance benefits,[2] he received medical treatment for his physical conditions at "Clinica San Francisco de Aguada." (Tr. 113-147). Progress notes revealed that Castro had a back condition but failed to reveal significantly elevated blood pressure. (Tr. 113-147). On February 1, 2007, Dr. Humberto Ramirez, a general practitioner, examined Castro. The report described that Castro's heart rhythm was regular, that his motor system, sensory, reflexes, gait and ability to speak were normal, that he presented no deformities, inflammation, fractures, edema, or pulsations, that he looked depressed, and that he could not bend, pick up or carry heavy objects. (Tr. 73-76, 319-321).

On March 1, 2007, Castro underwent an internal medicine evaluation by Dr. Karen V. Stewart Sotomayor. (Tr. 322-324). The report revealed that Castro was alert and oriented, well groomed, not in acute distress, with depressed mood, adequate thought content and idea communication, and adequate gait without assistance. (Tr. 323). Dr. Stewart's assessment was

---

[2] A claimant is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (per curiam) (citations omitted).

that Castro had "lumbar and cervical myositis and radiculopathy that makes him limited to sustained standing, sitting, bending, kneeling, stepping, pushing, carrying or rising." (Tr. 324).

For his mental condition, Castro received psychiatric treatment at "Centro de Salud Conductal del Oeste" ("CSCO")[3] and at "Clinica para el Cuidado y Tratamiento de la Conducta" ("ROVICO"). (Tr. 81-104, 109-112). Progress notes indicate that although Castro was depressed and under pharmacotherapy, he was logical, coherent, well oriented in the three spheres (person, place, and time), hygienic, his though process was intact, and did not have suicidal or homicidal ideas. (Id.).

Dr. Japhet Gaztambide treated Castro from January 1, 2005 through November 30, 2006. (Tr. 316). However, most of Dr. Gaztambide's report is illegible. Dr. Gaztambide filled out a form about Castro's mental ability to do work related activities. The form revealed that Castro had extreme limitations remembering, understanding, and carrying out short and simple instructions as well as detailed instructions, extreme limitations making judgments on simple work-related decisions, extreme limitations interacting appropriately with the public, co-workers and supervisors, and extreme limitations responding appropriately to work pressures and routine changes in a work setting. (Tr. 317-318). In sum, Dr. Gaztambide checked off that Castro was "extremely limited" (the maximum possible limitation in the form) in every single area of functioning.

In March 2007, Dr. Armando Caro conducted a psychiatric examination of Castro. (Tr. 77-80, 334-337). The report concluded that:

> The claimant was well groomed; he is tall and heavy built, wears a trimmed beard and moustache and appeared his stated age. He arrived to the scheduled appointment on time accompanied by his wife in private transportation. Eye contact was fair. Moderate psychomotor retardation was noted. Speech was fluent, coherent, and logical. No flight of ideas or looseness of associations were

---

[3] The Administrative Law Judge's opinion refers to CSCO as the "Behavioral Health" center.

> observed. Mood was depressed. Affect was constricted. He denied suicidal/homicidal ideas. He denied auditory/visual hallucinations. No delusions were elicited. The claimant was oriented in time, place and person. Concentration: impaired, was not able to subtract seven from a hundred five times or spell the word "MUNDO" backwards. Immediate memory: impaired, was able to register 2/3 unrelated objects. Short-term memory: fair, recalled 2/3 unrelated objects at five minutes. Recent memory: preserved, recalled how he got to the office and what happed a few hours before the appointment. Remote memory: fair, recalled the date of birth and events that happened in the past. The Folstein MMSE score was 17/30. Abstract thinking was impaired. Judgment and insight were poor.

(Tr. 335). Dr. Caro noted that Castro's capacity for social interaction was impaired, that he had no capacity to handle his own funds, and that his prognosis was poor based on the physical condition. (Id.).

In April 2007, Dr. Zulma McDougal, a psychiatric specialist, reviewed Castro's file. (Tr. 338). She diagnosed Castro with major depression and opined that his condition was severe. (Id.). A month later, Dr. McDougal reviewed Castro's file again, and affirmed her prior assessment:

> Case reviewed again as per your request. Medical evidence from GP indicates the presence of a depressive condition. TP's report indicates that claimant has psychomotor retardation, depression, constricted affect, impaired abstract thinking, poor judgment and insight, impaired ability for social interaction and is unable to handle funds. He is taking Navane (antipsychotic) and Klonopin. Do [*sic*] indicates claimant was numb and mumbling, seemed heavily medicated, with difficulty in concentration. He was anxious and needed assistance from his wife. ADL's report presents restrictions in daily functioning. In my opinion, the overall information in file points to a severe condition in spite of not being suicidal nor having been hospitalized.

(Tr. 339).

In May 2007, Dr. Luis Sanchez, another psychiatric specialist, reviewed Castro's file and completed a psychiatric review technique form ("PRTF") and mental residual functional capacity assessment ("MRFC"). (Tr. 340-358). Dr. Sanchez diagnosed Castro with a depressive disorder of moderate severity. (Tr. 340). Dr. Sanchez noted that Castro's restriction of daily living

activities and difficulties in maintaining concentration, persistence, or pace were moderate, that his difficulties in maintaining social functioning were mild, and that he had no episodes of decompensation. (Tr. 351).

Dr. Sanchez noted that Castro's "ability to remember locations and work-like procedures" as well as his ability to "understand and remember very short and simple instructions" were not significantly limited, but that his ability to "understand and remember detailed instructions" was moderately limited. (Tr. 355). Dr. Sanchez further stated that Castro's "ability to carry out very short and simple instructions," "ability to sustain an ordinary routine without supervision," "ability to work in coordination with or proximity to others without being distracted by them," and "ability to make simple work-related decisions" were not significantly limited, but that his "ability to carry out detailed instructions," "ability to maintain attention and concentration for exceeded periods," "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "ability to complete a normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods" were moderately limited (Id.). Dr. Sanchez added that Castro's "ability to interact appropriately with the general public," "ability to ask simple questions or request assistance," "ability to accept instructions and respond appropriately to criticism from supervisors," "ability to get along with supervisors and peers without distracting or exhibiting behavioral extremes," and "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness" were not significantly limited. (Tr. 356). Dr. Sanchez also noted that Castro's "ability to be aware of normal hazards and take appropriate precautions," "ability to travel in unfamiliar places and use public transportation," and "ability to set realistic goals or make plans independently of others"

were not significantly limited, but that his "ability to respond appropriately to changes in the work setting" was moderately limited. (Id.). Dr. Sanchez concluded the MRFC stating that:

> This claimant developed physical ailments. He became depressed and has been in ambulatory psychiatric care. T/P described severity not supported by other sources. PS/CE described a depressed mood with psychomotor retardation, diminished concentration and immediate memory gaps. Yet, he was the sole informant, coherent, logical, well oriented and with preserved short-term/recent/remote memory functions. He is able to: 1. understand, remember & carry out simple instructions; 2. maintain attention & concentration for at least two hour periods; 3. complete a normal workday and/or workweek without undue interruptions.

(Tr. 257).

In June 2007, Dr. Carlos Vazquez, a clinical psychologist, subsequently reviewed Castro's file including Dr. Sanchez's assessment. (Tr. 404-405). Dr. Vazquez reported that the medical evidence was supportive of Dr. Sanchez's assessment. (Tr. 404).

The Social Security Administration ("SSA") denied Castro's application for disability insurance benefits, finding that he was able to perform jobs that involve simple, routine, and repetitive duties. (Tr. 41-43, 171-174). Castro filed a request for reconsideration. (Tr. 175-177). The SSA affirmed its previous determination. (Tr. 44-45, 178-179). Castro requested a hearing before an ALJ (Tr. 180-181), and a hearing was held before ALJ Glenn G. Meyers. (Tr. 23-39). At the hearing, the ALJ asked a vocational expert ("VE"), Dr. Marieva Puig, whether a person with Castro's same work experience, age, and educational level, whose maximum exertional level is light, whose maximum mental capacity permits simple repetitive duties, who cannot have contact with the public, but can have maximum contact with supervisors or peers, could perform Castro's previous work. (Tr. 36-37). The VE answered that such person could not perform Castro's previous jobs. (Tr. 37).

The ALJ then asked the VE if there were jobs in the local, regional, or national economy for a person with the above-mentioned characteristics. (Id.). The VE answered that in Puerto

Rico there were jobs available for such a person. (Id.). Thereafter, Castro's representative asked the VE whether a person with the mental limitations described in Dr. Gaztambide's report—that is, a person who suffers from severe depression with psychosis, whose abilities related to job duties, such as following simple instructions, decision making, or personal interaction would be extremely affected—would be able to perform any of Castro's previous jobs or any other job in the economy. (Tr. 38-39). The VE responded in the negative. (Tr. 38). Castro's representative also asked the VE whether a person with part of the limitations presented in Dr. Caro's report—that is, a person whose concentration and social interaction is impaired—would be able to work in any of Castro's previous jobs or any other job in the economy. (Id.). The VE again responded in the negative. (Id.).

The ALJ issued a decision finding that Castro was not disabled as defined under the Act at any time form the alleged onset date through the date last insured. (Tr. 21). The ALJ found that Castro had the following combination of severe impairments: mild arterial hypertension, mild diabetes mellitus, lower back pain, and moderate depressive disorder (Tr. 15), but that Castro had the RFC to perform "light work as defined in 20 CFR 404.1567(b), except following and executing complex instructions." (Tr. 19). The ALJ found that "[t]he claimant was able to follow and execute simple and repetitive instructions and therefore able to perform light, unskilled, simple, repetitive work activity not requiring contact with the public and/or frequent contact with supervisors and coworkers." (Id.). Based on the VE's testimony, the ALJ concluded that, through the date last insured, considering Castro's age, education, work experience, and RFC, there were jobs in the national economy that Castro could perform. (Tr. 20).

Castro requested review of the ALJ's decision (Tr. 6), and the Appeals Council denied the request. (Tr. 1-5). The present complaint followed. (Docket No. 1).

**DISCUSSION**

The sole question before this court is whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520 that based on Castro's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning of the Act.

Castro makes numerous unwieldy claims in his brief; however, he seems to argue (1) that the hypothetical posed by the ALJ to the VE did not accurately reflect his mental limitations, (2) that the ALJ should have afforded controlling weight to the psychiatric treating sources, and (3) that the ALJ's decision failed to articulate the weight given to any of the medical opinions.

*Hypothetical Question*

Castro claims that the VE was posed with a very limited hypothetical that did not accurately reflect his mental limitations because it did not incorporate Dr. Gaztambide's findings that Castro had extreme limitations in his mental abilities to do work related activities. (Docket No. 23 p. 12, 15, 30). In support, Castro notes that at the hearing his representative posed a hypothetical question that incorporated Dr. Gaztambide's extreme mental limitations and the VE answered that a person with such limitations would not be able to work. (Docket No. 23 p. 13-14). Thus, Castro argues that had Dr. Gaztambide's findings been incorporated into the hypothetical, he would have been deemed disabled.

"The ALJ [is] entitled to credit the vocational expert's testimony as long as there [is] substantial evidence in the record to support the description of [the] impairments given in the . . . hypothetical." Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991). A VE's testimony is relevant to the claimant's disability determination insofar as the

hypothetical question posed to the VE accurately reflect the claimant's functional work capacity. See Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

Here, the hypothetical asked the VE to consider a person with Castro's same work experience, age, and educational level, whose maximum exertional level is light, whose maximum mental capacity is to do simple repetitive duties, who cannot have contact with the public, but can have maximum contact with supervisors or peers. (Tr. 36-37). The ALJ found that Castro had the RFC to be able to "follow and execute simple and repetitive instructions and therefore [was] able to perform light, unskilled, simple, repetitive work activity not requiring contact with the public and/or frequent contact with supervisors and coworkers." (Tr. 19). In reaching this assessment, the ALJ afforded particular weight to Dr. Sanchez's functional capacity assessment that Castro was able to understand and carry out simple instructions, sustain attention for two-hour intervals, and complete a regular workweek and workday without limitations. Conversely, the ALJ disregarded Dr. Gaztambide's severely restricted mental functional capacity report, finding that "Dr. Gaztambide's conclusion . . . is not supported by the psychiatrist's own medical findings, nor by those on the whole record." (Id.). Since it is within the ALJ's authority to weigh the evidence and to use only credible evidence in posing a hypothetical question to a vocational expert, see Arocho, 670 F.2d at 375, I find that the ALJ's hypothetical was proper. See also Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir.1994) (hypothetical is proper if it reasonably incorporates all of the claimant's disabilities recognized by the ALJ).

Castro also makes a number of claims attacking the ALJ's hypothetical for not including Dr. Caro's report, which according to Castro allegedly depicts a person with severe mental limitations. (Docket No. 23 p. 14, 17, 27). To substantiate his claims, Castro relied on the part of Dr. Caro's report that found a constricted affect, moderately limited psychomotor retardation, poor judgment and insight, impaired concentration, impaired remote memory, no capacity to

handle funds, and impaired capacity for social interaction. (Docket No. 23 p. 6, 22). [4] However, Castro sidesteps the part of the report that says that the claimant was logical, coherent, relevant, well oriented in the three spheres, with no flight of ideas or loosening of associations, recent memory preserved, short-term and remote memories not significantly impaired, concluding in a diagnosis of major depressive disorder of moderate intensity. (Tr. 17).

In the end, I find that the problem with Castro's proposition is twofold. Fist, as discussed above, it is well within the ALJ's authority to incorporate in the hypothetical only the evidence that is determined credible. Therefore, although the ALJ did not explicitly discredit or even mention in his decision the part of Dr. Caro's report on which Castro relies, it can be reasonably said that the ALJ did it implicitly by adopting Dr. Sanchez's functional capacity report. Importantly, Dr. Sanchez's report, concluding that Castro was able to work, considered Dr. Caro's findings. Dr. Sanchez's report specifically notes that Dr. Caro "described a depressed mood with psychomotor retardation, diminished concentration and immediate memory gaps. Yet, [Castro] was the sole informant, coherent, logical, well oriented and with preserved short-term/recent/remote memory functions." (Tr. 357). Second, although Dr. Caro's assessment could arguably justify that Castro's mental limitations were more severe than what was portrayed in the hypothetical, there is substantial evidence in the record to conclude otherwise, and the legal standard requires that the court "must affirm the [ALJ's] resolution, even if the record arguably could justify a different conclusion." Rodriguez-Pagán, 819 F.2d at 3.

---

[4] Castro's brief makes two errors in interpreting Dr. Caro's report. First, it states that that the prognosis of the claimant's mental condition was poor. (Docket No. 23 p. 6, 22). This is incorrect because what the record reveals is that the prognosis was poor based on the claimant's physical conditions. (Tr. 335). Second, the brief states that Dr. Caro's report supposedly assessed Castro's attention as impaired. (Docket No. 23 p. 6, 14, 22). This is incorrect because the record reveals that Dr. Caro's report does not make any assessment of attention. (Tr. 335).

*Controlling Weight*

Castro also claims that the ALJ erred as a matter of law by failing to afford controlling weight to the opinion of Dr. Gaztambide. (Docket No. 23 p. 19).

The opinion of a treating physician must be given controlling weight only when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). When controlling weight is not proper, the Commissioner, or the ALJ as his surrogate, must weigh the evidence and resolve conflicts on the record to determine the nature and severity of impairments. See, 20 C.F.R. § 404.1527(c)(2); Rodríguez Pagán, 819 F.2d at 4.

Here, Dr. Gaztambide's opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence. The opinion of a non-examining physician, like Dr. Sanchez, may constitute substantial evidence when, as here, it does not merely consist of checking boxes or brief conclusory statements, but instead is sufficiently detailed, reflects an extensive evaluation of the record, and mentions the claimant's impairments as well as medical conclusions. See Berrios Lopez, 951 F.2d at 431; Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 223 (1st Cir. 1981). Dr. Sanchez's report explicitly mentions Castro's impairments, notes consideration of Dr. Gaztambide's and Dr. Caro's findings, and states conclusions as to what Castro is able to do (Tr. 357), thereby suggesting that Dr. Sanchez conducted a longitudinal review of the record with some care.

Moreover, Dr. Gaztambide's opinion, on which Castro's argument relies, derives from a functional capacity report that consists of merely checked boxes and a medical report consisting of short conclusory statements. (Tr. 313-318). Therefore, in these particular circumstances, the ALJ's determination to credit Dr. Sanchez's opinion was reasonable and proper, notwithstanding the general rule that a treating physician like Dr. Gaztambide is entitled to more weight than a

non-treating, non-examining physician like Dr. Sanchez. See Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (affirming adoption of findings of non-testifying, non-examining physician, and permitting those findings by themselves to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability).

Furthermore, the opinions of Dr. Caro and Dr. Vazquez were also inconsistent with the opinion of Dr. Gaztambide. Dr. Caro's examination report revealed that Castro had a major depressive disorder of moderate intensity. (Tr. 335). Similarly, Dr. Vazquez, who reviewed Castro's file, including Dr. Sanchez's assessment, concluded that the evidence in the record was supportive of Dr. Sanchez's assessment. (Tr. 404). In light of the obvious inconsistencies with other substantial medical evidence, Dr. Gaztambide's opinion was clearly not entitled to controlling weight.

Castro also argues that the ALJ should have afforded controlling weight to the CSCO and ROVICO progress notes. (Docket No. 23 p. 20). This argument lacks merit because the CSCO and ROVICO progress notes do not support Castro's assertion that he experienced extreme mental limitations. As the ALJ correctly notes, the CSCO and ROVICO progress notes reveal that Castro was logical, coherent, relevant, and well-oriented in the three spheres, with thought process intact, appropriate affect, no homicidal, suicidal or psychotic ideas, and stable with the psychotherapy and pharmacotherapy regimen instituted. (Tr. 17).

*Explanation of Evidentiary Weight*

Castro further claims the ALJ's decision does not articulate the weight given to any of the medical opinions. (Docket No. 23 p. 30). Specifically, it is averred that the ALJ failed to provide good reasons for disregarding Dr. Gaztambide's opinion. (Id.).

20 C.F.R. § 404.1527(c)(2) requires that the ALJ's decision contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.  Additionally, when a treating source is not given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. § 404.1527(d)(2)(ii).

Here, the ALJ, in approximately one and a half single-spaced pages, adequately explained his reasons for disregarding Dr. Gaztambide's opinion and properly articulated the weight afforded to other sources.  (Tr. 16-18).  First, the ALJ acknowledged that according to "Dr. Gaztambide . . . the claimant'[sic] memory, concentration and judgment were impaired,"  yet found that Dr. Gaztambide did "not explain the basis for such conclusion." (Tr. 17).  In support of this statement, the ALJ properly cited Dr. Gaztambide's medical report and functional capacity assessment, which respectively consist of short conclusory statements and checked boxes.[5] (Tr. 17).

The ALJ also found that Dr. Gaztambide's assessment was "not supported by [his] own findings, nor by those on the whole record." (Tr. 18).  Regarding Dr. Gaztambide's inconsistencies in his own findings, the little that is legible from the medical report reveals that Castro's memory enabled him to remember two out of five words after five minutes and that his remote memory was "OK." (Tr. 315).  Notwithstanding, Dr. Gaztambide's mental functional capacity report indicated that Castro's ability to remember and carry out instructions was extremely limited.  (Tr. 317).

---

[5] The ALJ cited exhibit 1F, which contains a functional capacity assessment and a medical reports by Dr. Gaztambide.  (Tr. 17).

As to the supportability of Dr. Gaztambide's assessment in view of the whole record, the ALJ noted that the CSCO progress notes revealed that the claimant was logical, coherent, relevant, and well-oriented in the three spheres, with thought process intact, appropriate affect, no homicidal, suicidal or psychotic ideas, and stable with the psychotherapy and pharmacotherapy regimen instituted. (Tr. 17). This is especially significant given that Dr. Gaztambide was a member of the CSCO staff.[6]

Furthermore, the ALJ specifically considered Dr. Caro, Dr. Sanchez, and Dr. Vazquez. (Id.). The ALJ noted that Dr. Caro's evaluation disclosed that "the claimant was logical, coherent, and relevant . . . recent memory was preserved, while short term and remote memories were not significantly impaired." (Id.). The ALJ also noted that according to Dr. Sanchez and Dr. Vazquez, Castro's mental condition was a depressive disorder moderate in intensity. (Id.). The ALJ specifically noted that "[a] functional capacity assessment formulated by Dr. Sanchez . . . . discloses that the claimant is able to understand and carry out simple instructions, sustain attention for two (2) hours intervals and complete a regular workday and workweek without limitations." (Tr. 18). The ALJ then explicitly adopted such assessment and concluded that "the claimant's mental condition is moderate in intensity, which did not preclude performance of simple, unskilled work activity." (Id.).

Finally, Castro correctly notes in a footnote that the ALJ's decision completely ignored Dr. McDougal's report, in which she assessed that Castro's mental condition was severe. (Docket No. 23 p.23 n.27). Although the better practice would have been that the ALJ not ignore such report, given the facts of this case the omission of Dr. McDougal does not warrant remand. Dr. McDougal was a non-examining psychiatric specialist who reviewed all of the medical

---

[6] Castro concedes in his brief that Dr. Gaztambide is part of CSCO's staff. (Docket 23 p. 16). This fact is corroborated by page 14 of exhibit 10F, which is a CSCO psychiatric evaluation signed by Dr. Gaztambide. (Tr. 379-380).

evidence, and her assessment that Castro had a severe mental condition relied heavily on Dr. Gaztambide's opinion. (Tr. 339). Thus, since the ALJ properly explained his reasons for disregarding Dr. Gaztambide's opinion, this is not a case where a novel piece of probative evidence was ignored. Accordingly, the omission of direct reference to Dr. McDougal's report does not threaten the substantial basis for the ALJ's conclusion that Castro was able to work. See Rodriguez Sec'y of Health and Human Servs., 915 F.2d 1557, 1-3 (1st Cir. 1990) (ALJ's failure to address a specific piece of evidence did not undermine the validity of the ALJ's conclusion when such was supported by citations to substantial medical evidence in the record and the unaddressed evidence was cumulative of the evidence discussed by the ALJ.).

In view of the above, I find, first, that the ALJ properly explained his reasons for disregarding Dr. Gaztambide's opinion and, second, that the ALJ properly articulated the weight given to the opinions of Dr. Caro, Dr. Vazquez, and Dr. Sanchez.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of January, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge